UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**BEVERLY OWEN BARBER,**
 Plaintiff,

v.

**CHARLES ROBINSON, JR.,**
*et al.*,
 Defendants.

Case No. 4:23-cv-1621-CLM

## MEMORANDUM OPINION

  Attorney Beverly Barber sued Danny Mitchell in state court, claiming that Mitchell owed her $150,000 in unpaid attorneys' fees. Barber has not fared well. A jury rejected Barber's claim for unpaid attorneys' fees and instead awarded Mitchell $750,000 for Barber's abuse of the legal process. On top of that, the trial court ruled that Barber owed Mitchell $1.17 million after a bench trial on a lien-related counterclaim. And Barber now faces a post-judgment contempt hearing that could land her in the county jail by month's end.

  Having consistently struck out in state court, Barber has filed two federal lawsuits. First, Barber sued Mitchell over the trial court's interpretation of a state lien statute. *See Barber v. Mitchell*, Case No. 4:23-cv-484 (N.D. Ala. 2023). This court dismissed Barber's first complaint for lack of jurisdiction. *See id.* (doc. 25). In this second lawsuit, Barber sues Mitchell's attorney, Charles Robinson, Jr., and the trial court judge, Javan Patton, for RICO conspiracy, denial of due process, and violating Barber's right to a jury trial stemming from the August 2023 bench trial. Barber has raised the same claims to the Supreme Court of Alabama in a failed mandamus petition and on a pending direct appeal.

  Both defendants ask the court to dismiss Barber's complaint. (Docs. 4-5). For the reasons stated within, the court will **GRANT** both motions to dismiss and close this case.

## BACKGROUND

Barber's ongoing lawsuit against Mitchell has lasted three years, generated over 1,000 filings in the state trial court docket, and spawned multiple notices of appeal and mandamus petitions to the Supreme Court of Alabama. *See Barber v. Mitchell*, St. Clair Cnty. Case No. 75-cv-2021-900150. The court recounts its most relevant history below, focusing on two interrelated facts:

1. Barber sued Mitchell for $150,000 in unpaid attorneys' fees from a settled case; and,
2. Upon learning that Mitchell was about to sell his campground for $4 million, Barber filed a notice of lis pendens—*i.e.*, a notice that Barber claimed a lien on the campground based on her claim for attorneys' fees—that effectively killed the sale.

Both of Barber's federal lawsuits stem from the aborted campground sale. Barber's first federal lawsuit was about the state court's interpretation of the state's lien statute. This lawsuit stems from the trial court deciding Mitchell's lien-related counterclaim for slander of title and interference with a contract after a bench trial, rather than a jury trial.

### A. Barber's state-court complaint

Barber sued Danny Mitchell in St. Clair County Circuit Court in August 2021. Barber alleged that she represented Mitchell in a case that settled for $500,000 and was thus owed a 30% contingency fee of $150,000.

Charles E. Robinson represents Mitchell in the state case. The state supreme court appointed Jefferson County Circuit Judge Javan Patton to preside over the case because all judges in the circuit recused. Attorney Robinson and Judge Patton are the defendants here.

### B. The notice of *lis pendens*

In June 2022, Barber heard that Mitchell was about to sell property known as Mitchell's Paradise Campground for $4 million. So Barber filed a notice of lis pendens with the probate court, claiming that Mitchell owed

her fees in multiple cases that would equal or surpass the value of the campground. Barber then moved to attach the notice of lis pendens to her complaint in the attorneys' fees case before Judge Patton. In her motion, Barber admitted that she filed the notice of lis pendens when she heard that Mitchell was about to sell the campground.

Mitchell says the notice clouded his title, thus spooking the buyer, who backed out of the deal. So Mitchell counterclaimed against Barber, alleging slander of title and tortious interference with a business relationship. Barber answered by denying that there was any evidence of a buyer for the campground and counter-suing Attorney Robinson for interfering with her contract with Mitchell.

**C. The counterclaim hearing**

Mitchell moved for motion for summary judgment on the slander of title and tortious interference counterclaims, which Judge Patton granted. Barber sought mandamus relief from the state supreme court. The court denied the writ. Mitchell then asked Judge Patton to set an evidentiary hearing to quantify his campground-related damages before trying Barber's breach of contract claim to a jury.

Judge Patton granted the motion. She scheduled an August 2023 evidentiary hearing on Mitchell's damages from the lost campground sale and an October 2023 jury trial on Barber's breach of contract claim and Mitchell's abuse of legal process counterclaim.

Judge Patton heard the parties' evidence about the lost campground sale as scheduled. Barber raises several complaints about the hearing in this federal lawsuit, including (a) Judge Patton failed to empanel a jury, (b) Judge Patton removed the pens and pencils from Barber's counsel table so she couldn't take notes, (c) the court reporter refused to read back testimony so Barber couldn't understand and rebut the evidence, and, (d) Judge Patton wouldn't give Barber time to track down or call Evan Morris—the alleged campground buyer—as a witness.

The next month, Judge Patton entered a $1.17 million judgment in Mitchell's favor. Barber moved for a new trial, re-raising many complaints noted above. Barber also alleged that she discovered that the campground sale fell through because the Army Corps of Engineers and Alabama Power rejected plans to develop the campground—not because Barber's notice of lis pendens spooked Morris. Barber alleged that Attorney Robinson knew this, and he filed the slander of title and tortious interference counterclaims against Barber to recoup the lost development proceeds from her. Attorney Robinson also withheld Morris's address from Barber until the last moment so that Barber couldn't call Morris to the hearing to prove the conspiracy.

Mitchell opposed the motion, noting among other things that Barber mentioned her attempts to secure Morris's testimony five months before the hearing. Judge Patton denied the motion for new trial.

### D.   The post-hearing mandamus petition

Having lost in the trial court, Barber filed an "Amended Petition for Writ of Mandamus for Denial of Jury Demand and Petition for Writ of Mandamus for Recusal and Motion to Stay" in the Supreme Court of Alabama. As the title suggests, Barber sought to set aside Judge Patton's judgment and have Judge Patton removed from the case. In her petition, Barber alleged (among other things):

- Judge Patton wrongly held that Barber did not have a viable lien against the campground under Alabama law;
- Judge Patton wrongly denied her request that a jury decide the amount of Mitchell's damages;
- Judge Patton knew that Attorney Robinson bribed Morris to withhold the true reason the campground sale fell through (*i.e.*, the Army Corps of Engineers and Alabama Power refusal to issue a permit);
- Judge Patton refused to allow Barber to amend her complaint to raise a claim against Attorney Robinson for bribing Morris;

4

- Judge Patton prevented Barber from deposing Morris or bringing Morris to the hearing, despite Barber not finding Morris until three days before the hearing;
- Judge Patton took Barber's pencils and pens so that she could not make notes, thus hindering her ability to rebut Mitchell's evidence;
- Judge Patton told the court reporter not to read questions back to Barber, further hindering her ability to rebut Mitchell's evidence;
- Judge Patton wrongly threatened to hold Barber in contempt and wrongly brought two guards into the courtroom to intimidate Barber;
- Judge Patton secretly met with Mitchell twice in chambers; and,
- Mitchell said that he paid someone $80,000 to make his case go away.

*See Barber v. Mitchell*, St. Clair Cnty. Case No. 75-cv-2021-900150 (Doc. 691). The parties filed opposing affidavits, including Mitchell swearing that he had never been in Judge Patton's chambers; never told anyone he paid someone $80,000 to make the case go away; and never offered Judge Patton or anyone that worked for her any money to do anything. The state supreme court denied Barber's petition and denied as moot all the other motions she filed while it was pending. *See id.* (Doc. 739).

**E.   Barber's federal lawsuits**

Barber has filed two federal lawsuits stemming from Mitchell's campground-related counterclaim and Judge Patton's resulting decisions.

1. Barber first sued Mitchell and the Alabama Attorney General, seeking a declaration that Judge Patton had wrongly interpreted Alabama's lien statute when granting Mitchell summary judgment. *See Barber v. Mitchell*, Case No. 4:23-cv-484 (N.D. Ala. 2023). Barber dismissed her claim against the Attorney General. *Id.* (doc. 3). This court then dismissed Barber's claim against Mitchell because (a) federal courts

lack jurisdiction to interpret state statutes differently than state courts, and (b) Barber had no standing to sue Mitchell because Mitchell hadn't caused her injury—*i.e.*, Mitchell wasn't the person who incorrectly ruled on the lien statute. (Docs. 25-26).

2. While her first federal case was pending, Barber filed this lawsuit against Judge Patton and Attorney Robinson. In it, Barber pleads three counts. (Doc. 1). Count 1 alleges that Judge Patton and Attorney Robinson violated the criminal RICO statute, 18 U.S.C. § 1962(c), by conspiring to have Judge Patton rule for Mitchell on damages and Attorney Robinson on attorneys' fees, despite both parties knowing that Attorney Robinson bribed Morris to lie about the reason he didn't buy the campground. *See* 18 U.S.C. § 1964(c) (allowing persons injured by a RICO conspiracy to sue for treble damages). Count 2 alleges that Judge Patton denied Barber due process by conducting the damages hearing without a jury; by denying her ability to question Morris; and, by taking away her pens and pencils at the hearing. Count 3 alleges that the same actions resulted in a deprivation of her Seventh Amendment right to a jury trial.

### F. The trial on attorneys' fees

While this case was pending, the parties tried Barber's original breach of contingency contract claim, and Mitchell's abuse of legal process counterclaim, to a jury. The jury found in Mitchell's favor on both claims and awarded him $750,000 in damages. *See Barber v. Mitchell*, St. Clair Cnty. Case No. 75-cv-2021-900150 (Doc. 797). Judge Patton entered judgment on all claims, including the previously decided counterclaims, for a total of $1.92 million. *Id.*

Barber moved for a new trial. *Id.* (doc. 800). In it, Barber re-raised her arguments that (a) Mitchell and Robinson hid Morris from Barber (¶ 15-18, 20, 27-28); (b) Mitchell's counterclaims for slander of title and tortious interference should have been tried before a jury (¶ 19, 29); (c) Judge Patton took Barber's pens and pencils at the damages hearing (¶ 21); (d) the court reporter would not read back questions and answers at the damages hearing (¶ 22); and, (e) Judge Patton threatened to arrest

6

Barber at the hearing and used two guards to intimidate her (¶ 23-24). Judge Patton denied the motion. *Id.* (doc. 854).

Barber filed her notice of appeal to the Supreme Court of Alabama on May 6, 2024. *Id.* (doc. 883). In it, Barber said that she would appeal Judge Patton's decisions to (a) decide the amount of campground-related damages without a jury and (b) proceed with the damages hearing despite Mitchell withholding Morris's contact information. *Id.* Barber filed her opening brief on August 8, 2024, and Mitchell has yet to respond. *See Barber v. Mitchell and Mitchell's Paradise Campground*, SC-2024-0290 (Sup. Ct. Ala. May 6, 2024) (record last checked on August 19, 2024).

### G. Post-trial sanctions and resulting motions

In the meantime, Mitchell seeks post-trial discovery about Barber's ability to pay the judgment. Barber has refused to participate. *See Barber v. Mitchell*, St. Clair Cnty. Case No. 75-cv-2021-900150 (Doc. 951). After Barber failed to appear at a July 24, 2024, hearing, Judge Patton held Barber in contempt and ordered her to pay $3,500 in fines and comply within three days or risk arrest. *Id.* Mitchell claims that Barber refused to comply with that order and filed a notice to enforce. Barber claims that Mitchell seeks privileged information and sent uniformed officers to her house to intimidate her. Judge Patton has set an August 23 hearing that requires Barber to appear and bring any documents that support her arguments or face money sanctions. *Id.* (doc. 1038).

Two days after Judge Patton set the August 23 contempt hearing, Barber filed a motion here, asking this court to issue a temporary restraining order that would prevent Judge Patton from imposing more fines or ordering her arrest. (Doc. 25). Barber also asks the court to prohibit Judge Patton from issuing any other rulings in the state court case and give Barber at least four months to investigate the allegations she has or could make. *Id.* She twice amended that motion over the next three days. (Docs. 28-29).

7

### H.     Barber sues Attorney Robinson

About the same time, Barber sued Robinson for state-law fraud, slander, and abuse of process. *See Barber v. Robinson*, St. Clair Cnty. Case No. 75-cv-2024-900190 (doc 1) (filed July 31, 2024). In Count 1 (fraud), Barber alleges that Robinson lied about the reason the campground sale went through—*i.e.*, Robinson knew that the Army Corps of Engineers and Alabama Power would not permit development—and paid Morris to stay silent so Mitchell and Robinson could extract the lost sales money from Barber instead. *See id.* (doc. 5, ¶ 17-22). In Count III (abuse of process), Barber alleges that Attorney Robinson is using the post-trial discovery process to gain privileged information and seek an unfair advantage in the *Barber v. Mitchell* case. *See id.* ¶ 26-28. Robinson has yet to respond to the original or amended complaint.

—

While the court could go on recounting the hundreds of filings Barber has made (and continues to make) in this court, the state trial courts, and the state supreme court, the court has made its key point: Barber raises the same issues here that she (a) raised and lost in a mandamus petition to the state supreme court, (b) has re-raised in her direct appeal that is pending in the state supreme court, and (c) has raised in her new state lawsuit against Attorney Robinson. The question here is whether this court has jurisdiction to rule on the same issues Barber is perpetually litigating in state court.

### STANDARD OF REVIEW

When a claim is challenged for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the party bringing the claim bears the burden of establishing proper subject matter jurisdiction. *Sweet Pea Marine Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). And "[i]f the plaintiff fails to shoulder that burden, the case must be dismissed." *Williams v. Poarch Band of Creek Indians*,

8

839 F.3d 1312, 1314 (11th Cir. 2016) (citing *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1042 (11th Cir. 2008)).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). "Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (citing Fed. R. Civ. P. 9(b)).

## DISCUSSION

Both Defendants ask the court to dismiss the claims against them. The court addresses the motions in the order they were filed.

### A. Judge Patton's Motion to Dismiss (Doc. 4)

Judge Patton moves to dismiss based on absolute judicial immunity because each of Barber's claims against her are based on judicial actions taken during state-court proceedings. (Doc. 4). The court agrees.

1. <u>Legal standard</u>: Judges are entitled to absolute judicial immunity from damages "for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Sharp v. City of Huntsville, Ala.*, 730 F. App'x 858, 860 (11th Cir. 2018) (quoting *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005)). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Id.* "In determining whether a judge acted within his judicial capacity, we consider whether the act (1) 'constituted a normal judicial function'; (2) 'occurred in the judge's chambers or in open court'; (3) 'involved a case pending before the judge';

and (4) whether 'the confrontation arose immediately out of a visit to the judge in his official capacity.'" *Id.* (finding that a district court judge acted clearly within his judicial capacity in denying the plaintiff's request for a jury trial and in making statements about witness credibility).

    2. <u>Discussion</u>: Barber complains of these acts in Counts 1-3:

- Judge Patton denied Barber's request for a jury to decide damages (Count 1, ¶ 3; Count 2, ¶ 11; Count 3, ¶ 13);
- Judge Patton took Barber's pens and pencils during the damages hearing (Count 1, ¶ 4);
- Judge Patton prevented Barber from questioning Morris to help conceal the scheme to defraud Barber (Count 1, ¶ 5-7; Count 2, ¶ 10; Count 3, ¶ 15-16);
- Judge Patton awarded Attorney Robinson excessive fees (Count 1, ¶ 8);
- Judge Patton dismissed Barber's complaint / motion to quash evidence Attorney Robinson removed from the courtroom (Count 1, ¶ 9); and,
- Judge Patton insulted Barber and called two guards to intimidate Barber during the hearing (Count 3, ¶ 14)

(Doc. 1). All of these alleged acts occurred while Judge Patton was acting within her role as judge in the underlying state case, and all of them happened in open court or in chambers. And because the Supreme Court of Alabama (a) appointed Judge Patton to preside over the case and (b) denied Barber's petition to have Judge Patton removed because of the same alleged acts, this court finds that Judge Patton was acting in her judicial capacity, within her appointed jurisdiction. So even if this court assumes all pleaded facts are true and believes that Judge Patton acted in error or out of malice, Judge Patton has absolute immunity from this court's judgment. *See Sibley*, 437 F.3d at 1070. The court thus **dismisses** all counts against Judge Patton. And even if the court is wrong on immunity, the court would still dismiss all counts against Judge Patton based on the *Rooker-Feldman* doctrine discussed below.

### B. Attorney Robinson's Motion to Dismiss (Doc. 5)

Robinson also moves to dismiss all three counts against him. (Doc. 5). The court addresses the counts in the order Barber pleaded them.

- **Count 1: RICO violation**

Barber alleges that Attorney Robinson violated the federal RICO statute, 18 U.S.C. § 1962(c), by conspiring with Judge Patton to make sure Barber paid for the profits that Mitchell would lose in the campground deal. Robinson argues that the court should dismiss Count 1 for any of three reasons: (1) the court lacks jurisdiction under the *Rooker-Feldman* doctrine, (2) the court should abstain from ruling on issues that are subject to state-court litigation (*i.e., Younger* abstention), and (3) Barber fails to plead facts that would establish that Robinson violated RICO. The court starts with *Rooker-Feldman* because it affects the court's jurisdiction on all three counts.

1. <u>Legal standard</u>: The *Rooker-Feldman* doctrine "is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Efron v. Candelario*, __ F.4th __, 2024 WL 3627786, at *3 (11th Cir. Aug. 7, 2024). The reason is simple: "only the Supreme Court can 'reverse or modify' state court judgments." *Id.* (citing 28 U.S.C. § 1257(a)). The Eleventh Circuit frames the *Rooker-Feldman* test like this:

> The question is whether the case has been brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. This requires a court to determine whether the plaintiff seeks relief from an injury caused by the judgment itself or whether he seeks damages for some independent source of injury. If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies.

*Id.* at *4 (cleaned up).

11

2. *Efron v. Candelario*: The Circuit Court recently applied this test to an allegation that two appellate judges, an ex-wife, and her attorney conspired to rig two cases. After filing for divorce, David Efron paid his ex-wife Madeline Candelario $50,000 per month toward the eventual distribution of their marital assets. *Efron*, 2024 WL 3627786, at *1. Efron stopped making the $50,000 payments when the divorce became final.

About the same time, two Puerto Rico appellate judges had life-altering events: (1) Appellate Judge Cordero started a romantic relationship with Candelario, Efron's ex-wife, and (2) Appellate Judge Aponte's brother was charged with public corruption. According to Efron, this presented both judges with a problem (or opportunity, depending on how you look at it): Judge Cordero needed a court order re-starting Efron's $50,000 monthly payments to his girlfriend, and Judge Aponte needed help eliminating the charges against his brother.

Each appellate judge was assigned to the panel for the case that affected the other. So, according to Efron, the two judges conspired to help each other: Judge Aponte wrote an opinion that required the lower court to re-start the $50,000 monthly payments, while Judge Cordero's panel wrote an opinion that required the lower court to remove certain language from Aponte's brother's indictment—a ruling that ultimately led the trial judge to issue an acquittal. *Id.* at *1-2.

Fed up with $50,000 monthly payments, Efron stopped paying. So Candelario asked the Puerto Rico courts to garnish his salary and attach several of Efron's accounts. Efron consistently lost in Puerto Rico courts, so he sued Candelario and her attorney in federal district court, alleging a conspiracy to deprive Efron of his civil rights and due process, plus unjust enrichment. Efron asserted that Candelario, her attorney, and her romantic partner (Judge Cordero) would continue benefitting from Judge Aponte's decision until it was abrogated. *Id.* at *2.

The district court held that *Rooker-Feldman* precluded jurisdiction. The Eleventh Circuit affirmed. To avoid *Rooker-Feldman*, Efron argued that he was seeking damages independent of Judge Aponte's decision,

damages that resulted from third-party actions—*i.e.*, the conspiracy and fraud committed by his ex-wife and her attorney. *Id.* at *5-6. But the Circuit Court found that there was no difference:

> Although Efron does not explicitly ask us to overturn the state court's judgment, Efron asks us to find that the court's determination that Candelario is entitled to $50,000 a year is the result of corruption, which amounts to the same thing. Efron essentially conceded as much in his complaint, where he alleged that 'his due process rights can only be restored by the abrogation of the Aponte decision.' Efron therefore does not seek relief from an injury by a third party or challenge the constitutionality of a state court rule, distinguishable from the state court's application of that rule. Instead, Efron's claim seeks relief from injuries caused by the state-court judgment because the claim at 'its heart challenges the state court decision itself'—the money adjudicated to Candelario by the Aponte decisions—'and not the statute or law which underlies that decision.' In sum, Efron's due process challenge 'boils down to a claim that the state court judgment itself caused him constitutional injury.'

*Id.* at * 5.

3. <u>Discussion</u>: The same is true here. Like Efron, Barber seeks damages distinct from the $1.17 million that Judge Patton awarded Mitchell on his slander of title and tortious interference counterclaims—*i.e.*, "compensatory, punitive, and mental anguish damages." (Doc. 1, p. 9). Also like Efron, Barber's complaint doesn't expressly ask this court to overrule or abrogate Judge Patton's judgment on the counterclaims.

"But the claim for relief, alone, is not determinative: the question is still whether the substance—if not the form—of a plaintiff's claim requires a district court to 'review' and 'reject' a state court judgment." *Efron*, 2024 WL 3627786, at * 6. The substance of Barber's claim requires this court to review and reject many of Judge Patton's legal rulings that led to the

13

$1.17 million judgment; for example, proceeding without a jury and proceeding without Morris's testimony. Barber makes clear her desire to use the pleaded RICO charge to help overturn Judge Robinson's judgment in her response to Robinson's motion to dismiss:

> The Defendant argues that discovery is needed then maybe the Plaintiff could come up with something. If a deposition is conducted for Morris, what we may come up with is sufficient evidence for a *criminal* RICO charge for wire fraud. Morris' testimony will verify the Plaintiff was totally blameless for the loss of the sale of Mitchell's property and confirm Robinson's offer to reduce the price of the land, if the blame was allowed to fall upon Barber; plus, the testimony will disclose the conditions set out; as well as, the subsequent offer and contract, along with the threat to sue Morris for breach of contract. Morris' testimony will show the property was of no interest to the buyer after it failed inspections, not Barber's lis pendens in the amount of $150,000.00 for legal fees. Further, Morris can confirm the existence of reports for the rejection, made known to Robinson and his client; yet, they proceeded to steal millions of dollars knowing the claims were fraudulent.

(Doc. 15, p. 7). In short, Barber wants to litigate the RICO charge in Count 1 so she can obtain evidence that proves Judge Patton was wrong—*i.e.*, Barber wants to prove that Robinson's bribery of Morris, not her filing of the notice of lis pendens, caused Morris to back out of the sale.

Allowing this claim to go forward would require this federal court to review and reject the state trial court's judgment. It *could* also require this court to reject a ruling of the state supreme court. The court agrees with Barber that we cannot be sure whether the state supreme court rejected Barber's arguments about a jury trial, the failure to question Morris, the taking of pens and pencils, etcetera, on the merits or on procedural grounds when the supreme court rejected her petition for a

writ of mandamus without opinion. (Doc. 15, pp. 2-3). But Barber has raised the same arguments in (a) her direct appeal, which is currently pending before the state's highest court, and (b) her recent lawsuit against Attorney Robinson, which is pending before a different circuit judge in St. Clair County. So Barber is simultaneously asking this federal court and two state courts to reject the same rulings from Judge Patton.

*Rooker-Feldman* and 28 U.S.C. § 1257(a) require this court to defer to the state courts on these issues. The court thus **dismisses without prejudice** Count 1 against Robinson because this court lacks jurisdiction. The court would make the same ruling for Judge Patton if she lacked judicial immunity. Because the court lacks jurisdiction, it does not address Count 1's equally apparent issues with the *Younger* abstention doctrine and failure to plead a viable RICO claim.

- **Counts 2-3 (Constitutional violations)**

Counts 2 and 3 plead constitutional violations; the former alleges a due process violation, and the latter alleges a violation of the right to a jury trial. The court dismisses both counts against Attorney Robinson for lack of jurisdiction. The court lacks jurisdiction for two reasons.

First, *Rooker-Feldman* precludes jurisdiction on both claims for the same reasons discussed in Count 1. This court cannot determine whether Judge Patton violated Barber's constitutional rights to a jury and to due process without reviewing and rejecting Judge Patton's judgment. *Efron*, 2024 WL 3627786, at * 6. Plus, Barber filed with the state supreme court an unsuccessful mandamus petition and a pending appeal on the same issues. So the court lacks jurisdiction to review and reject Judge Patton's decisions.

Second, Barber lacks standing to sue Attorney Robinson in Counts 2-3 because she fails to plead facts against Robinson. While both counts end with a statement seeking judgment against both defendants, jointly and severally, all the facts that support the claims are actions that Judge Patton took. (Doc. 1, ¶¶ 9-16). Barber alleges no facts about Robinson. *Id.*

If Robinson did not violate Barber's constitutional rights, then Robinson did not injure Barber in fact, thereby precluding Article III standing. *See* U.S. Constit. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); *Spokeo, Inc. v. Robbins*, 587 U.S. 330 (2016).

For both reasons, the court will **dismiss without prejudice** Counts 2 and 3 against Robinson because the court lacks jurisdiction.

### C. Barber's Motion to Amend Complaint (doc. 27)

The court previously denied Barber's motion to amend her complaint to add Mitchell as a Defendant and said that it would not allow another amended complaint until it ruled on the Defendants' jurisdictional arguments. (Doc. 24). Yet three days after Judge Patton set a contempt hearing, Barber filed another amended complaint (doc. 26), along with a motion to amend the complaint (doc. 27), again seeking to add Mitchell as a defendant.

The court denies that motion for two reasons. First, it contravenes the court's previous order that said, "[t]he court will rule on the pending motions to dismiss before granting leave to amend the complaint and before the parties may commence discovery." (Doc. 24).

Second, the court does not find that justice requires granting leave under Rule 15(a)(2). Barber's proposed complaint is little more than a six-count shotgun pleading. Each of the counts merely adopts Barber's factual narrative then adds a conclusory statement that the Defendants violated a legal provision. No count would survive a Rule 12(b)(6) motion or a motion for more definitive statement. Nor would any count survive the *Rooker-Feldman* analysis that divests this court of jurisdiction over Barber's currently-pleaded claims. In short, justice does not require accepting a complaint that cannot entitle Barber to relief.

16

### D. Barber's Amended Motion for Preliminary Injunction (doc 29)

Finally, Barber asks the court to jump into the post-trial discovery fray pending before Judge Patton. Specifically, Barber asks the court to enter an order that would

(a) prohibit Attorney Robinson from seeking, and Judge Patton from ordering the disclosure of, information about the investigators Barber is using to discover evidence of the fraud Barber alleges Attorney Robinson and Judge Patton have committed;
(b) prohibit Attorney Robinson from seeking, and Judge Patton from ordering the disclosure of, the confidential filings she made with the Alabama Judicial Inquiry Commission ("JIC");
(c) prohibit Judge Patton from imposing a fine against Barber or incarcerating Barber for failing to disclose her investigators' identities, her investigators' findings, or the materials supporting Barber's JIC complaint; and,
(d) staying Judge Patton from taking any further action until this court concludes this lawsuit and gives Barber at least four months to finish her investigation of Judge Patton and Attorney Robinson.

(Doc. 29, p. 5). The court denies this motion for two reasons.

First, the Anti-Injunction Act, 28 U.S.C. § 2283, says that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." None of the exceptions apply. No Act of Congress expressly authorizes a stay of this case, and the court doesn't need to stay Judge Patton's management of her own case to aid, protect, or effectuate this court's judgment on any of the pending motions.

Second, even if § 2283 did not apply, principles of federalism dictate this court refuse to enjoin the state court case. *See Charles A. Wright & Arthur Miller*, Federal Practice & Procedure § 2942 (3rd ed. June 2024

update) ("Finally, it should be noted that even if an injunction against a state proceeding is not barred by Section 2283, the court still may refuse to issue it. Various abstention doctrines may counsel the federal court to refrain from exercising its power to issue an injunction."). Judge Patton is in a better position to determine whether Barber has complied with her discovery orders. And if Barber does not like the result on the upcoming contempt hearing, she can seek mandamus relief from the Supreme Court of Alabama, as she has often done. Barber presents no facts that would create the exceptional circumstance needed for federal court intervention in state court business.

## CONCLUSION

For the reasons stated within, the court **GRANTS** Patton and Robinson's motions to dismiss, (docs. 4, 5), **DENIES** Barber's motion to amend her complaint (doc. 27), **DENIES** Barber's amended motion for preliminary injunction (doc. 29), and **DENIES AS MOOT** the predecessor motions for injunctive relief (docs. 25, 28).

Because the court lacks jurisdiction over Barber's claims, the court **DISMISSES WITHOUT PREJUDICE** Barber's complaint. But any attempt to amend Barber's complaint would be futile, so the court will not grant Barber leave to amend. The court will enter a separate order closing this case.

**DONE** and **ORDERED** on August 19, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE